Filed 10/29/13  P. v. Martinez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRES VARGAS MARTINEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B245756<br>(Super. Ct. No. 2009015119)<br>(Ventura County) |

Andres Vargas Martinez appeals a judgment following conviction of committing sexual intercourse with a child less than 10 years of age, and committing a lewd act with a child.  (Pen. Code, §§ 288.7, subd. (a), 288, subd. (a).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In April 2009, L.G. lived with her husband and children, including six-year-old J. and seven year-old U., in a bedroom of a Thousand Oaks residence.  As many as 16 or 17 people lived in the home, which L.G. likened to "an ant hill."  Martinez resided in part of the living room and was "in charge" of the residence.

On April 21, 2009, J. and U. were watching television in the living room while L.G. prepared dinner in the kitchen.  Martinez and U. sat on the sofa and J. sat on the floor.  Martinez directed J. to pull down her pants and underwear and sit on his lap. He then removed his penis from his pants, moistened it with saliva, and placed it against

---

[1] All statutory references are to the Penal Code unless stated otherwise.

J.'s vagina. Martinez's hands touched J.'s vagina and buttocks. U. saw the incident and, at trial, described Martinez's actions.

When L.G. went to the living room to check on her children, she saw J. "with her pants down, with her little underwear down, [and Martinez's] hand on her buttocks, and the other one on her vagina." L.G. saw Martinez's penis and his fingers touching J.'s vagina and breasts.

Shocked by the sight of Martinez touching J., L.G. summoned her children and examined them. She found that J.'s vagina was "very red." L.G. called her brother and the police. L.G.'s brother then called J.'s teacher, Monica Guzman, who arrived at the residence shortly thereafter.

Ventura County sheriff's deputies responded to L.G.'s call and Deputy Jerardo Gomez, a Spanish-speaking officer, spoke with L.G. Meanwhile, U. spoke with Guzman and stated that Martinez "took out the thing he uses to go pee pee with, and he asked my sister to pull down her pants." U. added, "This is not the first time it's happened. It's happened before." Guzman immediately relayed this information to an investigating officer.

Subsequently, in a videotaped interview, U. physically demonstrated how J. sat on Martinez's lap and Martinez touched her. U. also stated that he saw Martinez's penis during the incident.

Later that evening, Sergeant Anthony Aguirre, an official Spanish-language translator, interviewed J. in a videotaped interview. J. stated that Martinez partially removed his pants as well as her pants, "got out his thing," and placed his penis in her vagina, i.e., "put it in [her]."

Deanna McCormick, a nurse trained to perform forensic medical examinations of sexual assault victims, examined J. in the late evening of April 21, 2009. McCormick noted that J. suffered from a fresh abrasion to her labia minor that could have been caused by penetration, masturbation, or a straddle injury. J. also had scar tissue and a notch on her hymen, consistent with "some type of penetration."

Following advisement and waiver of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Martinez spoke with Sergeant Aguirre during a videotaped interview conducted in the Spanish language. Martinez stated that J. jumped on his lap and "pull[ed] on [him]." He stated that J. partially removed his pants as well as her own. Martinez admitted that his penis touched J.'s vagina for several minutes, but denied that penetration occurred. He stated that he had been consuming alcohol that day and admitted that he was aroused by J.'s behavior, describing her as "provocative." Martinez also admitted to touching J.'s vagina on earlier occasions when she would sit on his lap and touch his penis.

At trial, the prosecutor played the videotaped recordings of Aguirre's interviews with J. and Martinez. The jury received English-language transcripts of the interviews. Aguirre testified that he had reviewed the transcripts while listening to the recordings, and the transcripts were "fair and accurate."

The jury convicted Martinez of committing sexual intercourse with a child under 10 years of age (count 1), and committing a lewd act with a child (count 2). (§§ 288.7, subd. (a), 288, subd. (a).) The trial court sentenced Martinez to 25 years to life in prison for count 1 and imposed and stayed a six-year midterm sentence for count 2 pursuant to section 654. The court also imposed a $2,000 restitution fine, a $2,000 parole revocation restitution fine (stayed), a $3,200 sexual offense fine, an $80 court security assessment, and a $60 criminal conviction assessment; ordered victim restitution; and awarded Martinez 1,517 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 290.3, 1465.8, subd. (a); Gov. Code, § 70373.)

Martinez appeals and contends that the trial court erred by: 1) admitting into evidence, over repeated defense objections, the videotaped recording of J.'s interview, and 2) not instructing the jury to follow the official English-language translation of the recorded interviews. He asserts that the errors denied him due process of law and impaired his right to a jury trial pursuant to the federal and California Constitutions.

3

*I.*

Martinez argues that the trial court erred by admitting into evidence J.'s videotaped interview because it was irrelevant, emotional, and unduly likely to influence the jury. He points to his counsel's argument during an in limine hearing that J. appeared as a "most adorable little girl . . . just beautiful [and] helpless [and] the definition of purity."

Only relevant evidence is admissible evidence, and except as otherwise provided by law, all relevant evidence is admissible. (Evid. Code, §§ 350, 351; *People v. Tully* (2012) 54 Cal.4th 952, 986.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The test of relevance is whether the evidence tends logically and by reasonable inference to establish a material fact such as identity, intent, or motive. (*Tully*, at p. 986.) The trial court possesses broad discretion to determine the relevance of evidence. (*Ibid.*; *People v. Jones* (2011) 51 Cal.4th 346, 376 ["[V]ideotapes are admissible within the court's discretion when they assist the jury, and they are excludable within the court's discretion when they do not assist the jury"].)

The trial court also possesses discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. (Evid. Code, § 352; *People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1154.) We review the trial court's decision pursuant to Evidence Code section 352 for an abuse of discretion. (*People v. Pearson* (2013) 56 Cal.4th 393, 457.)

The trial court did not abuse its discretion by admitting evidence of J.'s videotaped interview. The videotape showed J. demonstrating with stuffed animals how she straddled Martinez's legs. J. also pointed to anatomical drawings of children when she responded to the interviewer's questions regarding Martinez's sexual abuse. As well, the videotape provided evidence of J.'s demeanor as she described the sexual abuse, relevant to the jury's assessment of her credibility. Moreover, the probative value of the

4

videotape is not substantially outweighed by any undue prejudice caused by J.'s appearance. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214 ["prejudice" within the meaning of Evidence Code section 352 refers to evidence that tends to evoke an emotional bias against the defendant and that has "*very little effect on the issues*"].)

## II.

Martinez contends that the trial court erred by not instructing the jury, sua sponte, to rely upon the official English-language translations of the Spanish-language interviews, as opposed to the individual translation of any bilingual juror. (CALCRIM No. 121 [jurors must accept court interpreter's English-language translation]; *People v. Cabrera* (1991) 230 Cal.App.3d 300, 303 [misconduct for juror to rely on his translation rather than the interpreter's translation].) He relies upon a decision depublished following briefing in this appeal. (*People v. Arancibia* (Feb. 27, 2013, B240341) [opn. ordered nonpub. June 12, 2013, S209794].) Martinez asserts that the error is reversible per se because it is impossible for him to establish prejudice.

We disagree and reject Martinez's contentions because he has not established that any juror was bilingual, used his knowledge of the Spanish language in listening to the videotaped interviews, imparted his knowledge of the Spanish language to another juror, or disregarded the English-language translation that accompanied the videotapes in the jury deliberation room. Indeed, the trial court stated to the jurors that they would not understand the videotaped interviews and would use an English-language transcript. During summation, defense counsel reminded the jurors that they "promised" not to use "[their] own Spanish to decide how something is."

During presentation of evidence at trial, the jury received English-language transcripts of the videotaped interviews and followed along as the prosecutor played the videotapes. Sergeant Aguirre, a certified translator, testified that the transcripts were "fair and accurate" representations of his interviews with J. and Martinez.

The trial court also instructed that the jury must not receive additional information from any outside source in considering the evidence, and that the verdict must rest only upon evidence received at trial. (CALCRIM No. 201.) We presume the

5

jury understands and follows the court's instructions.  (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

Brian J. Back, Judge

Superior Court County of Ventura

_____

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.